**UNITED STATES of America,
Plaintiff–Appellant,**

and

**The Regents of The University
of California, Plaintiffs,**

v.

**STATE OF NEW MEXICO, and Health
and Environment Department,
Defendants–Appellees.**

**No. 92–2275.**

United States Court of Appeals,
Tenth Circuit.

Aug. 18, 1994.

Elizabeth Ann Peterson (Myles E. Flint, Acting Asst. Atty. Gen., Karen L. Egbert and J. Carol Williams, Attorneys, Dept. of Justice, Washington, DC, and Robin Henderson, Office of Gen. Counsel, U.S. Dept. of Energy, Washington, DC, of counsel, were with her on the briefs), Attorney, Dept. of Justice, Washington, DC, for plaintiff-appellant.

Susan M. McMichael (Tom Udall, Atty. Gen., New Mexico, and Randall D. Van Vleck, Asst. Atty. Gen., Santa Fe, NM, were with her on the brief), Special Asst. Atty. Gen., Asst. Gen. Counsel, New Mexico Environment Dept., Santa Fe, NM, for defendants-appellees.

Before ANDERSON, McKAY, and TACHA, Circuit Judges

TACHA, Circuit Judge.

The issue presented in this appeal is whether section 6001 of the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. § 6961, waives federal sovereign immunity from certain state imposed permit conditions that address the presence of radionuclides in the disposal of hazardous waste at the Los Alamos National Laboratory ("LANL"). The district court found that RCRA does waive sovereign immunity for the permit conditions in question and granted summary judgment for the state

of New Mexico. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. BACKGROUND

The Department of Energy ("DOE") is the owner of LANL, a federal facility operated by the Regents of the University of California. LANL is involved in research and development that produces and requires disposal of hazardous wastes[1], mixed wastes[2] and radioactive wastes. The Environmental Improvement Board ("the Board") of the New Mexico Health and Environment Department issued LANL a hazardous waste facility permit to incinerate hazardous waste at an on-site controlled air incinerator. LANL uses its incinerator to burn both hazardous and radioactive waste. This dual role presents the possibility of radioactive waste being accidentally incinerated during a hazardous waste burn or of radioactive emissions from leftover radioactive material being emitted during a hazardous waste burn.

The United States sought a declaratory judgment challenging three conditions imposed in the permit, arguing that the conditions were outside the scope of the waiver of sovereign immunity contained in RCRA § 6001. The United States and the State of New Mexico filed cross-motions for summary judgment, and the district court granted summary judgment in favor of New Mexico. The district court determined that the three challenged permit conditions implemented state regulations adopted by the Board and were "requirements" as contemplated in RCRA § 6001.[3]

The United States argues that New Mexico has not established any standards for radionuclide emissions. Therefore, the permit conditions are not "requirements" because they are not established state standards nor do they implement any "legal or regulatory standard established by the State of New Mexico." The challenged permit requirements are:

1. V.C.3: *Determination of Radionuclides Content.* Each batch of waste treated under this permit shall be surveyed to determine its radionuclide content.

2. V.E. MONITORING

For each hazardous waste burn, the *continuous* monitoring and/or recording devices below shall be observed hourly by an operator during waste feed operation....

   10. Radioactivity from the exhaust stack.

3. V.F.: During hazardous waste feed operations the following operational limits shall be observed:

   9. *Radioactivity.*

   a. The exhaust gas radioactivity measured during operation under this permit shall not exceed the background by ten percent (10%) for more than one minute.

   b. The exhaust gas radioactivity measured during operation under this permit shall not exceed the background by fifty percent (50%).

   c. Background is defined as that level of radiation read when the incinerator is operating at the parameters required for hazardous waste treatment but no waste feed occurring measured prior to hazardous waste treatment.

The New Mexico Hazardous Waste Act ("HWA"), N.M.Stat.Ann. §§ 74–4–1 to 74–4–14, contains standards concerning hazardous waste permits and disposal. The Environmental Improvement Act, N.M.Stat.Ann.

---

1. Hazardous waste is defined by RCRA as "solid waste, or combination of solid wastes" that pose specified risks, by virtue of quantity, concentration or inherent characteristics. 42 U.S.C. § 6903(5). Solid waste is defined as "any garbage, refuse, ... and other discarded material, ... resulting from industrial, commercial, mining, and agricultural operations, and from community activities, but does not include ... source, special nuclear, or byproduct material as defined by the Atomic Energy Act of 1954, as amended." 42 U.S.C. § 6903(27).

2. "Mixed" waste is waste which has both hazardous and radioactive components. *See State of New Mexico v. Watkins,* 969 F.2d 1122, 1132 (D.C.Cir.1992).

3. The district court also upheld the permit conditions under the Clean Air Act. 42 U.S.C. § 7416. Because we find the challenged permit conditions acceptable under RCRA, we need not decide this issue.

§§ 74–4–1 to 74–1–10 (1978), requires the Board to enforce these standards. N.M.Stat. Ann. § 74–1–8(13). If a hazardous waste disposal facility has met the requirements in the HWA the Board may issue a hazardous waste permit. N.M.Stat.Ann §§ 74–4–4(A)(6) and 74–4–4.2(C). The Board may issue permits subject to any condition necessary to protect health and safety. N.M.Stat. Ann. § 74–4–4.2(C). Sections 501 and 901 of the New Mexico Hazardous Waste Management Regulations ("HWMR"), which adopt Environmental Protection Agency regulations, contain more specific standards for both hazardous waste permits and disposal. 40 C.F.R. §§ 264.344 and 270.32(a), (b). The regulations require that "[t]he operator of a hazardous waste incinerator may burn only wastes specified in his permit." 40 C.F.R. § 264.344(a).

## II. ANALYSIS

### A. Standard of Review

■ We review the grant of summary judgment de novo, using the same standard applied by the district court. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

### B. RCRA Section 6001

■ Absent an express waiver of sovereign immunity, the "activities of the Federal Government are free from regulation by any state." *Mayo v. United States,* 319 U.S. 441, 445, 63 S.Ct. 1137, 1139, 87 L.Ed. 1504 (1943). Congress may waive sovereign immunity and authorize the states to regulate federal instrumentalities. *Id.* at 446, 63 S.Ct. at 1140. "[A] waiver of the traditional sovereign immunity cannot be implied but must be unequivocally expressed." *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976) (citation and internal quotations omitted).

■ RCRA section 6001 requires that all federal agencies and instrumentalities

engaged in any activity resulting, or which may result, in the disposal or management of solid waste or hazardous waste shall be subject to, and comply with, all Federal, State, interstate, and local requirements, both substantive and procedural (including any requirements for permits or reporting or any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief), respecting control and abatement of solid waste or hazardous waste disposal in the same manner, and to the same extent, as any person is subject to such requirements. . . .

42 U.S.C. § 6961. RCRA does not define what constitutes a "requirement." Courts have interpreted "requirements" to mean "objective and administratively preestablished" standards, *McClellan Ecological Seepage Situation v. Weinberger,* 707 F.Supp. 1182, 1198 (E.D.Cal.1988) (interpreting similar provision of the Clean Water Act), and "objective, quantifiable standards subject to uniform application." *Kelley v. United States,* 618 F.Supp. 1103, 1108 (W.D.Mich. 1985) (also interpreting the Clean Water Act); *see also Romero–Barcelo v. Brown,* 643 F.2d 835, 855 (1st Cir.1981) (interpreting similar "requirements" language in section 12 of the Noise Control Act, 42 U.S.C. § 4911, as meaning "relatively precise standards capable of uniform application"), *rev'd on other grounds,* 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). However, "the meaning of 'requirement' cannot . . . be limited to substantive environmental standards—effluent and emissions levels, and the like—but must also include the procedural *means* by which those standards are implemented: including permit requirements, reporting and monitoring duties, and submission to state inspection." *Parola v. Weinberger,* 848 F.2d 956, 961 (9th Cir.1988); *Mitzelfelt v. Department of the Air Force,* 903 F.2d 1293, 1295 (10th Cir.1990) ("The word [requirement] can reasonably be interpreted as including substantive standards and the means for implementing those standards. . . ."). In *PUD No. 1 v. Washington Department of Ecology,* the Supreme Court, interpreting the Clean

Water Act, recognized that "requirements" are not limited to specific and objective criteria, but can include criteria that are open-ended. —— U.S. ——, —— – ——, 114 S.Ct. 1900, 1910–11, 128 L.Ed.2d 716 (1994) (recognizing that criteria "are often expressed in broad, narrative terms, such as 'there shall be no discharge of toxic pollutants in toxic amounts.'"). With these standards as guides we address the government's arguments.

The United States first argues that, because New Mexico has not developed any standards dealing with radionuclides, these permit conditions cannot be construed as implementing any objective, preexisting state standards capable of uniform application. Second, the United States argues that the permit conditions themselves are not RCRA § 6001 requirements because they are not preexisting state statutes or regulations and are not capable of uniform application. We reject these arguments.

■Permit condition V.C.3, requiring LANL to survey waste to determine its radioactive content, permit condition V.E.10, requiring that the emissions from a hazardous waste burn be monitored for unauthorized radioactivity, and permit condition V.F.9, requiring that a hazardous waste burn be discontinued if radioactive emissions are detected and reach a determined level, all serve to implement the state standard requiring that only permitted hazardous waste is being disposed of under the hazardous waste permit. *See* N.M.Stat.Ann. §§ 74–4–4(A)(6) and HWMR § 501 (incorporating 40 C.F.R. § 264.344(a) into the statutory scheme). Ensuring that only permitted waste is being burned also implements other regulatory goals expressed in N.M.Stat.Ann. 74–4–4(A) and 74–4–4.2(C), which provide for hazardous waste permit conditions necessary to protect human health and the environment.

The United States objects especially to permit conditions V.E.10 and V.F.9 because they do not merely call for surveying what waste is being burned but also call for the monitoring of radioactive emissions. The United States points out that there are no state standards for radioactive emissions which could guide such permitting conditions[4] and contend that, as a result, the permit conditions cannot be "requirements" for which sovereign immunity has been waived under RCRA § 6001. However, due to the dual capacity of the LANL incinerator as a hazardous waste and radioactive waste incinerator, permit condition V.C.3 alone is insufficient to ensure that only permitted waste is being burned. Radioactive material may remain in the incinerator apparatus following a radioactive burn and be caught in a hazardous waste burn. Permit conditions V.E.10 and V.F.9, therefore, merely recognize the particular circumstances at LANL and operate to ensure that only permitted hazardous waste is being burned. *See Sierra Club v. United States Dept. of Energy,* 770 F.Supp. 578, 580 (D.Colo.1991) (recognizing that regulations are often generic while permits may be tailored to the specific facility to ensure greater protection of health and environment).

■ The United States objects strenuously to the specific provision in permit condition V.F.9 requiring that radioactive emissions during a hazardous waste burn "should not exceed the background by ten percent (10%) for more than one minute." It is true that the state has not provided guidance for analyzing the effects of different levels of radioactive emissions. However, as pointed out above, it does not appear that the state is attempting to substantively regulate radioactive waste through this condition. The ten percent standard can be seen as a cut-off point beyond which it may be reasonably assumed that there is more than a de minimis level of radioactive material in the hazardous waste burn. In this way, condition V.F.9 is merely another tool for New Mexico to implement its statutory and regulatory hazardous waste provisions.

■ Finally, the United States asserts that permit condition V.F.9 contains a meaningless and unworkable standard. It argues

4. In its Reply Brief, the United States concedes that it does not challenge the district court's determination that these permit conditions do not "regulate" radioactive waste, instead relying on its argument that the conditions are not "requirements."

that the condition requires LANL to measure "background" prior to *any* operation of the incinerator—an impossible task because the incinerator was in use prior to this permit. In the alternative, the United States asserts that the condition requires LANL to measure "background" from time-to-time, and that such a requirement lacks sufficient parameters to be workable. We reject the United States' reading of the permit condition. A plain reading of the condition's language suggests that "background" should be measured when the incinerator is operating and prepared to incinerate, but no waste has been introduced. A measurement at that time produces the "background" which the permit condition requires not be surpassed by certain parameters. Further, the language requiring measurement from time-to-time emphasizes New Mexico's position that it is not engaging in substantive regulation of radionuclides, but simply attempting to ensure compliance with New Mexico's statutory requirements.

## III. CONCLUSION

We affirm the district court's grant of summary judgment in favor of the State of New Mexico.