*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0184P (6th Cir.)
File Name: 01a0184p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
　　　　*Plaintiff-Appellee,*

　　　　*v.*

COMMONWEALTH OF
KENTUCKY; KENTUCKY
NATURAL RESOURCES &
ENVIRONMENTAL
PROTECTION CABINET,
SECRETARY,
　　　　*Defendants-Appellants.*

No. 00-5247

Appeal from the United States District Court
for the Western District of Kentucky at Paducah.
No. 99-00087—Thomas B. Russell, District Judge.

Argued: May 2, 2001

Decided and Filed: June 5, 2001

Before: NORRIS and COLE, Circuit Judges; STEEH,
District Judge.[*]

---

[*]The Honorable George Caram Steeh, United States District Judge
for the Eastern District of Michigan, sitting by designation.

1

---

**COUNSEL**

**ARGUED:** Randall McDowell, NATURAL RESOURCES AND ENVIRONMENTAL PROTECTION CABINET, Frankfort, Kentucky, for Appellants.  Todd S. Aagaard, UNITED STATES DEPARTMENT OF JUSTICE, ENVIRONMENT DIVISION APPELLATE SECTION, Washington, D.C., for Appellee.  **ON BRIEF:** Mark A. Posnansky, OFFICE OF LEGAL SERVICES, Frankfort, Kentucky, for Appellants.  Todd S. Aagaard, UNITED STATES DEPARTMENT OF JUSTICE, ENVIRONMENT DIVISION APPELLATE SECTION, Washington, D.C., John A. Bryson, UNITED STATES DEPARTMENT OF JUSTICE, LAND & NATURAL RESOURCES DIVISION, Washington, D.C., for Appellee.

---

**OPINION**

---

R. GUY COLE, JR., Circuit Judge. The Commonwealth of Kentucky, acting through the Secretary of the Kentucky Natural Resources and Environmental Protection Cabinet ("Cabinet"), appeals from the district court's ruling that federal law preempts permit conditions imposed by the Cabinet relating to the disposal of radioactive waste in a landfill operated by the United States Department of Energy ("DOE").  For the following reasons, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

The Paducah Gaseous Diffusion Plant (the "Plant") is an active uranium enrichment facility owned by the DOE, located in McCracken County, Kentucky.  The Cabinet regulates disposal of solid waste at the Plant through the issuance of permits.  In 1994, DOE submitted a permit

application to the Cabinet for the construction and operation of a contained solid waste landfill at the Plant. In February 1995, the Cabinet issued a permit to DOE authorizing the construction of the landfill.

After verifying that DOE had completed construction in accordance with the approved plans, the Cabinet issued another permit to DOE on November 4, 1996, authorizing operation of the landfill. This operating permit contained conditions relating to the disposal of radioactive materials in the landfill. Specifically, Condition 11 prohibited DOE from placing in the landfill "[s]olid waste that exhibits radioactivity above de minimis levels." Condition 12 prohibited DOE from placing in the landfill "solid waste that contains radionuclides . . . until a Waste Characterization Plan for radionuclides has been submitted to the Division of Waste Management for review and approval."

DOE appealed the imposition of these permit conditions through Kentucky's administrative process. On January 15, 1999, a state Hearing Officer issued a report recommending that the Secretary affirm the Cabinet's imposition of the challenged permit conditions. DOE filed objections and the Cabinet responded. On February 18, 1999, the Secretary entered a final order affirming and adopting the Hearing Officer's report and recommendation. The Secretary accordingly dismissed DOE's administrative appeal.

DOE then filed a petition for judicial review of the Cabinet's final action in Kentucky state court on March 22, 1999. Under Kentucky law, DOE was required to file its petition for state court review of the Cabinet's action within thirty days of the Cabinet's final order. *See* KY. REV. STAT. § 224.10-470(1). DOE alleges that it filed its state court action to preserve its rights under state law.

On April 1, 1999, ten days after filing its state court action, DOE filed the instant action in the United States District Court for the Western District of Kentucky seeking

declaratory and injunctive relief. In its complaint, DOE challenged the permit conditions at issue on the grounds that: (1) the Atomic Energy Act of 1954, 42 U.S.C. §§ 2011-2297g-4, preempts state regulations relating to the disposal of radioactive materials; (2) the conditions violate the federal government's sovereign immunity from state regulation; and (3) the Commonwealth failed to comply with its own statutes and regulations in imposing the conditions. On April 27, 1999, the Cabinet filed a motion to dismiss DOE's complaint, arguing that: (1) the district court should decline jurisdiction over DOE's action based upon the discretion accorded it under the Declaratory Judgment Act, 28 U.S.C. § 2201, and under the *Burford* abstention doctrine, *see Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); (2) DOE's preemption and sovereign immunity claims fail to state a claim for which relief can be granted; and (3) the challenged permit conditions comport with Kentucky law.

The district court denied the Cabinet's motion to dismiss on November 5, 1999. The court found that it was not required to decline jurisdiction over the case inasmuch as DOE had presented a facially conclusive claim of federal preemption, the resolution of which did not require the court to interpret state law or make factual findings. The court further found that federal law preempts the Cabinet's attempt to regulate DOE's disposal of radioactive waste in the landfill. The court accordingly entered judgment for DOE and dismissed the case.

On appeal, the Cabinet argues that: (1) the district court erred in concluding that the challenged permit conditions are preempted by federal law; and (2) the district court should have abstained from hearing this case based upon the discretion accorded it under the Declaratory Judgment Act and the *Burford* abstention doctrine.

Cabinet satisfy the second ground for *Burford* abstention. The district court's adjudication of DOE's action does not stand to disrupt Kentucky's efforts to establish a coherent policy with respect to solid waste management, except to the extent such policy oversteps Kentucky's authority by regulating radioactive materials. "[T]here is . . . no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy." *Id.* at 363 (quoting *Zablocki v. Redhail*, 434 U.S. 374, 380 n.5 (1978)). *Cf. Coalition for Health Concern v. LWD, Inc.*, 60 F.3d 1188, 1194-95 (6th Cir. 1995) (distinguishing *New Orleans Public Service, Inc.* on the grounds that plaintiffs' federal court claims in *LWD* could not be decided without interfering with Kentucky's policies governing the issuance of hazardous waste incineration permits.)

Accordingly, we find that the district court did not err in refusing to abstain in this case, notwithstanding the concurrent pending litigation between the same parties in Kentucky state court.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the district court in its entirety.

would avoid piecemeal litigation; (4) which court obtained jurisdiction first; and (5) whether federal law or state law provides the basis for the decision on the merits. *See Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 15-16, 23 (1983).

On balance, these factors weigh strongly against abstention in this case. While neither the federal court nor the Kentucky state court has assumed jurisdiction over property in this case, and neither party has alleged that one court is significantly more convenient than the other, the remaining factors favor federal court resolution of this dispute. The federal case will resolve the entire dispute between DOE and the Cabinet, such that abstention is not required to avoid piecemeal litigation. Although DOE instituted the Kentucky state court action just prior to filing suit in federal court, the federal case has been fully litigated whereas no action has been taken by the parties in the state case. Finally, federal law provides the basis for the decision on the merits. Thus, the Cabinet's argument under the *Colorado River* abstention doctrine is not well-taken.

Finally, the Cabinet's argument for abstention under *Burford* also must fail. *Burford* abstention applies (1) if a case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," or (2) if the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River*, 424 U.S. at 814.

Neither of these two circumstances is presented here. As previously noted, this case involves a question of preemption under federal law, not a question of state law. Thus, the Cabinet cannot satisfy the first ground for *Burford* abstention. *See New Orleans Pub. Serv., Inc.*, 491 U.S. at 362-63 (holding that *Burford* abstention is not justified where no difficult question of state law is presented). Nor can the

## II.  DISCUSSION

### A.  Statutory and Regulatory Overview

Congress enacted the Atomic Energy Act ("AEA") in 1954 to promote the development of atomic energy for peaceful purposes under a program of federal regulation and licensing. *See Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 206-07 (1983). Congress has subsequently amended the AEA to create a dual regulatory structure, whereby the federal government regulates the "radiological safety aspects involved in the construction and operation of a nuclear plant," and the states "retain their traditional responsibility in the field of regulating electrical utilities for determining questions of need, reliability, costs, and other related state concerns." *Id.* at 205.

The AEA regulates three different classes of radioactive material: source material, special nuclear material, and byproduct material. *See* 42 U.S.C. § 2014(e), (z), (aa). Source material includes uranium, thorium, and other materials that DOE deems necessary for the production of special nuclear material. 42 U.S.C. §§ 2014(z), 2091. Special nuclear material includes plutonium, enriched uranium, and other material capable of releasing substantial quantities of atomic energy. 42 U.S.C. §§ 2014(aa), 2071. Byproduct material includes "(1) any radioactive material (except special nuclear material) yielded in or made radioactive by exposure to the radiation incident to the process of producing or utilizing special nuclear material, and (2) the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content." 42 U.S.C. § 2014(e).

The AEA grants DOE and the Nuclear Regulatory Commission exclusive responsibility for regulating source, special nuclear, and byproduct material. *See* 42 U.S.C. § 2201(b), (i)(3). Pursuant to this authority, DOE has

developed and implemented an extensive regulatory regime for managing radioactive materials and limiting the release of radioactivity. *See, e.g., General Environmental Protection Program*, DOE Order 5400.1 (1988); *Radiation Protection of the Public and the Environment*, DOE Order 5400.5 (1990); *Radioactive Waste Management*, DOE Order 435.1 (1999) (establishing requirements for managing low-level radioactive waste, including waste characterization, waste treatment, disposal, and environmental monitoring). These regulatory standards are designed to assure that the public, workers, and the environment are not exposed to unsafe levels of radiation. *See* DOE Order 435.1 § 4.

In 1976, Congress passed the Resource Conservation and Recovery Act ("RCRA"), which amended the Solid Waste Disposal Act of 1965, 42 U.S.C. §§ 6901-6992k. Congress enacted the RCRA to end the environmental and public health risks associated with the mismanagement of hazardous waste. *See Sierra Club v. United States Dep't of Energy*, 734 F. Supp. 946, 947 (D. Colo. 1990). Generally, the RCRA prohibits the treatment, storage, or disposal of hazardous waste at private or governmental facilities without a permit issued by either the United States Environmental Protection Agency ("EPA") or an authorized state. *See id.*; 42 U.S.C. §§ 6925(a), 6961. The RCRA expressly contemplates that state and local governments will play a lead role in solid waste regulation. *See* 42 U.S.C. § 6901(a)(4).

Under the RCRA, hazardous waste is defined as "solid waste, or [a] combination of solid wastes[,]" that, for enumerated reasons, creates public health and environmental dangers. 42 U.S.C. § 6903(5). "Solid waste," however, does not include "source, special nuclear, or byproduct material as defined by the Atomic Energy Act of 1954." 42 U.S.C. § 6903(27). Indeed, the RCRA expressly provides:

Nothing in this chapter shall be construed to apply to (or to authorize any State, interstate, or local authority to regulate) any activity or substance which is subject to . . .

jurisdiction in a declaratory judgment action "where another suit is pending in a state court presenting the same issues, *not governed by federal law*, between the same parties." 316 U.S. at 495 (emphasis added). Here, the essence of DOE's complaint is that the AEA preempts the conditions imposed by the Cabinet in the landfill permit. Such a claim presents an issue of federal law. *See Musson Theatrical, Inc.*, 89 F.3d at 1257. Thus, the reasoning of *Brillhart*, which expressly applies only to declaratory judgment actions "not governed by federal law," 316 U.S. at 495, does not support abstention in this case.[3]

Neither does the Supreme Court's decision in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), favor abstention. In *Colorado River*, the Supreme Court held that, in rare circumstances, a federal district court may properly abstain from exercising its subject matter jurisdiction based on considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* at 817 (internal quotation marks and citation omitted). Factors relevant to a court's decision to abstain under *Colorado River* include: (1) whether the state court or the federal court has assumed jurisdiction over the res or property; (2) which forum is more convenient to the parties; (3) whether abstention

---

[3] In support of its abstention argument under *Brillhart*, the Cabinet relies on *International Association of Entrepreneurs v. Angoff*, 58 F.3d 1266 (8th Cir. 1995). The court in *Angoff* affirmed the district court's decision to abstain because it found the plaintiff's federal suit to be an "attempt to circumvent the removal statute's deadline by using the Declaratory Judgment Act as a convenient and temporally unlimited back door to federal court." *Id.* at 1270. Here, DOE's declaratory judgment action is not an attempt to avoid defending against a state court action. Rather, DOE has a compelling interest in choosing a federal forum to seek a declaration of its federal statutory immunity from state regulation. *See United States v. Pennsylvania*, 923 F.3d 1071 (3d Cir. 1991) (holding that district court should not have abstained in light of federal government's right to seek declaration of immunity under federal statute in the federal forum of its choice). Thus, the Cabinet's reliance on *Angoff* is misplaced.

the preemption issues. [H]owever, . . . if the issues present facially conclusive claims of federal preemption, we will not abstain, but instead will decide the preemption question.

*GTE Mobilnet*, 111 F.3d at 475. *See also New Orleans Public Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 362 (1989) (noting that where determination of preemption claim would not disrupt state's attempt to ensure uniformity in treatment of an essentially local problem, abstention is not required); *Bunning v. Commonwealth of Kentucky*, 42 F.3d 1008, 1011 (6th Cir. 1994) (concluding that "abstention is not required in a case presenting facially conclusive claims of federal preemption, where resolution of the dispute does not require the court to interpret state law or make factual findings"); *Norfolk & W. Ry. Co. v. Pub. Utilities Comm'n*, 926 F.2d 567, 573 (6th Cir. 1991) ("[A]bstention is not required when the naked question, uncomplicated by ambiguous language, is whether the state law on its face is preempted.")

In light of the foregoing principles, the district court in this case correctly found that abstention was inappropriate. DOE's action for declaratory and injunctive relief presented a facially conclusive claim of federal preemption, inasmuch as a determination of the preemption question did not require a "detailed analysis of state law," *GTE Mobilnet*, 111 F.3d at 478, or the "making of findings on disputed facts," *Norfolk & W. Ry. Co.*, 926 F.2d at 573. Indeed, the district court was not required to inquire "beyond the four corners" of the challenged state order in resolving the preemption question. *New Orleans Pub. Serv., Inc.*, 491 U.S. at 363. Because DOE presented a facial preemption claim, the district court properly found that it should not abstain in deference to the state court proceeding.

None of the judicially-created abstention doctrines cited by the Cabinet refute this conclusion. In *Brillhart*, the Supreme Court held that a federal court may abstain from exercising its

the Atomic Energy Act of 1954 except to the extent that such application (or regulation) is not inconsistent with the requirements of such Act[].

42 U.S.C. § 6905(a).

## B. Preemption

Under the Constitution's Supremacy Clause, U.S. CONST. art VI, § 2, Congress may preempt state law so long as it acts within its constitutionally delimited powers. *See M'Culloch v. Maryland*, 17 U.S. 316, 427 (1819) ("It is of the very essence of supremacy, to remove all obstacles to its action within its own sphere, and so to modify every power vested in subordinate governments, as to exempt its own operations from their own influence.") The Supreme Court has established a general framework by which preemption questions are analyzed:

[S]tate law can be preempted in either of two general ways. If Congress evidences an intent to occupy a given field, any state law falling within that field is preempted. If Congress has not entirely displaced state regulation over the matter in question, state law is still preempted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.

*Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984). Whether a federal statute preempts state or local law is a question of federal law, *see Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1257 (6th Cir. 1996), which we review de novo, *see GTE Mobilnet v. Johnson*, 111 F.3d 469, 475 (6th Cir. 1997).

The district court noted that while the RCRA governs the disposal of hazardous waste, and the AEA governs the disposal of radioactive waste, no statute specifically delegates

authority to regulate a mixture of the two types of waste.[1] Accordingly, the district court turned to the relevant federal agencies' construction of the AEA and RCRA for interpretative guidance. *See Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 843 (1984) (requiring courts to give considerable weight to executive department's construction of a statutory scheme it administers and deference to its administrative interpretations). The court found that, according to DOE and EPA rulings pertaining to mixtures of radioactive and hazardous waste, the AEA governs the radioactive portion of the waste mixture and the RCRA governs the hazardous portion. *See EPA Notice: State Authorization to Regulate Hazardous Components of Radioactive Wastes Under the Resource Conservation and Recovery Act*, 51 Fed. Reg. 24,504 (July 3, 1986); *DOE Final Rule: Radioactive Waste; Byproduct Material*, 52 Fed. Reg. 15,937 (May 1, 1987); *EPA Clarification Notice: Clarification of Interim Status Qualification Requirements for the Hazardous Components of Radioactive Mixed Waste*, 53 Fed. Reg. 37,045 (Sept. 23, 1988). Under this dual regulatory scheme, DOE has exclusive authority to regulate the radioactive component of waste mixtures, whereas EPA -- or states authorized by EPA under the RCRA -- retain the authority to regulate the hazardous portion. *See In re Westinghouse Materials Co. of Ohio*, No. RCRA-V-W-89-R-11, 1991 WL 303402 (E.P.A. Dec. 31, 1991) (applying dual regulatory scheme to disposal of waste mixtures). Based on the agencies' interpretation of the AEA and the RCRA, the district court concluded that the Cabinet's attempt to impose conditions on DOE's disposal of radioactive materials in the landfill was preempted by federal law.

---

[1]DOE acknowledges that the solid waste it intends to place in the landfill contains both a radioactive component (*i.e.*, "source, special nuclear, and byproduct material") and a non-radioactive, but still hazardous, component. As such, a mixture of hazardous waste and radioactive waste comprises the waste in question in this case.

### D. Abstention

Aside from its preemption argument, the Cabinet contends that the district court should have abstained from hearing this case based upon the discretion accorded it under the Declaratory Judgment Act and the *Burford* abstention doctrine. While we normally review de novo a district court's decision to abstain, *see Fed. Express Corp. v. Tennessee Pub. Serv. Comm'n*, 925 F.2d 962, 967 (6th Cir. 1991), we have at least on one occasion reviewed such a decision for abuse of discretion, *see Romine v. Compuserve Corp.*, 160 F.3d 337, 341, 343 (6th Cir. 1998). As the Second Circuit has noted, however, "there is little practical distinction between review for abuse of discretion and review de novo" in abstention cases, inasmuch as the district court's discretion to abstain "is narrowed by a federal court's obligation to exercise its jurisdiction in all but the most extraordinary cases." *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998).

The Cabinet's abstention argument is two-fold. First, it contends that the district court should have declined jurisdiction over DOE's complaint based upon the discretion accorded it under the Declaratory Judgment Act, 28 U.S.C. § 2201. *See Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942) (ordering federal district court to dismiss § 2201 action in favor of pending state court proceeding). The Cabinet further asserts that the judicially-created doctrine of abstention set out in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), and its progeny required the district court to decline jurisdiction over this case. Neither of the Cabinet's abstention arguments has merit.

In a case procedurally similar to this one, we addressed the "interplay between preemption and abstention" presented here:

[W]hen state and federal courts have concurrent jurisdiction to decide preemption questions, a federal court should abstain to allow the state court to consider

factual findings regarding the conflict between the federal and state requirements was therefore not in error.

## C.  Federal Sovereign Immunity

DOE also argues that the Cabinet's challenged permit conditions are invalid because the United States has not waived its federal sovereign immunity to state regulation of radioactive materials at federal facilities.

The federal government is immune from state regulation except to the extent waived. *See United States v. Mitchell*, 445 U.S. 535, 539 (1980). The Supreme Court has held that waivers of federal immunity must be unequivocal, *id.* at 538, and are to be strictly construed in favor of the United States, *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992). The issue of whether the United States has waived its sovereign immunity is a question of law subject to de novo review. *See United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 504 (6th Cir. 1998).

While the district court did not address DOE's sovereign immunity argument in light of its holding that the Cabinet's regulations are preempted by federal law, DOE could have prevailed on this alternate theory as well. Neither the AEA nor any other federal law waives federal immunity from regulation of DOE facilities by states with respect to materials covered by the AEA. While the Cabinet is correct to point out that the RCRA waives federal immunity to state regulation of federal facilities with respect to solid waste, *see* 42 U.S.C. § 6961(a), the RCRA's definition of "solid waste" expressly excludes materials covered by the AEA, *see* 42 U.S.C. § 6903(27). As discussed previously, the Cabinet's permit conditions constitute state regulation of source, special nuclear, or byproduct material, as defined by the AEA. Accordingly, the United States has not waived its immunity from the permit conditions at issue. We therefore affirm the district court's judgment on this alternate ground.

On appeal, the Cabinet objects to the district court's conclusion on several grounds. The Cabinet first asserts that the challenged permit conditions are not preempted by the AEA because the Cabinet has the statutory authority under Kentucky law to regulate solid waste disposal. Thus, the Cabinet contends that the challenged permit conditions do not constitute regulation of radioactive materials, but rather merely address the fact that DOE's solid waste may be contaminated with radionuclides. The Cabinet further argues that the district court failed to support its conclusion with specific factual findings as to how the permit conditions conflict with the requirements of the AEA. Because the AEA does not expressly address the disposal of solid waste contaminated with radionuclides, the Cabinet argues, it was error to conclude that the AEA preempts the permit conditions without finding actual conflicts between the state and federal requirements.

The Cabinet's arguments are not well-taken. As the Supreme Court unequivocally stated in *Pacific Gas & Electric*, "the federal government has occupied the entire field of nuclear safety concerns, except the limited powers expressly ceded to the states." 461 U.S. at 212. Accordingly, the AEA preempts any state attempt to regulate materials covered by the Act for safety purposes. *See id.* Here, the challenged permit conditions specifically limit the amount of "radioactivity" and "radionuclides" that DOE may place in its landfill. The sources of such "radioactivity" and "radionuclides" are materials covered by the AEA, *i.e.*, source, special nuclear, and byproduct materials. The Cabinet seeks to impose these conditions to protect human health and the environment. The permit conditions therefore represent an attempt by the Cabinet to regulate materials covered by the AEA based on the Cabinet's safety and health concerns, and are thus preempted.

The fact that the Cabinet is authorized, under state law, to regulate solid waste disposal is irrelevant to our preemption analysis. Thus, the Cabinet's reference to its state law

authority to ensure that only solid waste is placed in the landfill misses the point.[2] The disposal limits imposed by the challenged conditions constitute regulation of materials covered by the AEA. They are therefore preempted. Similarly, the Cabinet's assertion that it has the "right under state law" to prohibit any radioactive materials from being placed in the landfill is incorrect. The Supreme Court rejected a similar argument in *Pacific Gas & Electric*:

> Respondents . . . argue . . . that although safety regulation of nuclear plants by states is forbidden, a state may completely prohibit new construction until its safety concerns are satisfied by the federal government. We reject this line of reasoning. State safety regulation is not preempted only when it conflicts with federal law. Rather, the federal government has occupied the entire field of nuclear safety concerns . . . .

461 U.S. at 212.

While federal law does not preempt state regulation of solid waste, *see City of Philadelphia v. New Jersey*, 437 U.S. 617, 620-21 n.4 (1978), states may not regulate the radioactive component of solid waste. As the district court correctly concluded, DOE has exclusive authority to regulate the radioactive component of waste mixtures, whereas EPA -- or states authorized by EPA under the RCRA -- retain the authority to regulate the non-radioactive portion. *See In re Westinghouse Materials Co. of Ohio*, 1991 WL 303402, at *6-8 (applying dual regulatory scheme to disposal of waste mixtures). Because the challenged permit conditions regulate materials covered by the AEA, they are therefore preempted.

---

[2]DOE argues that the Cabinet incorrectly characterizes Kentucky law as authorizing it to ensure that only solid waste is placed in the landfill. Because the extent of the Cabinet's state law authority to regulate solid waste is irrelevant to our preemption analysis, however, we need not address DOE's argument based on Kentucky law.

The Cabinet relies on the Tenth Circuit's decision in *United States v. New Mexico*, 32 F.3d 494 (10th Cir. 1994), to rebut this conclusion. In *New Mexico*, the United States challenged permit conditions imposed by the state addressing the presence of radionuclides in the incineration of hazardous waste at a DOE facility. *Id.* at 495. The case presented the question of whether the permit conditions were within the scope of the RCRA's waiver of federal sovereign immunity. *Id.* at 496. The court held that conditions imposed by the state on DOE's hazardous waste incinerator were "requirements" under state law, and thus were applicable to the DOE facility under the RCRA. *Id.* at 498. The court expressly noted, however, that DOE did not raise the issue of whether the conditions were preempted by the AEA as state regulation of radioactive materials; rather, DOE relied solely on its argument that the conditions were not "requirements" under the RCRA's waiver provision. *Id.* at 498 n.4. Thus, *New Mexico* did not address the same issue presented in this case, *i.e.*, whether state regulation of the radioactive component of solid waste is preempted by the AEA. The Cabinet's reliance on *New Mexico* in support of its preemption argument is misplaced.

The Cabinet's argument that the district court erred in failing to identify specific conflicts between the challenged conditions and federal law also must fail. As noted previously, the Supreme Court has stated that the AEA preempts the field of state regulation of radioactive materials. *Pac. Gas & Elec.*, 461 U.S. at 212. "When the federal government completely occupies a given field or an identifiable portion of it, as it has done here, the test of preemption is whether 'the matter on which the state asserts the right to act is in any way regulated by the federal government.'" *Id.* at 213 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 236 (1947)). Under such test, DOE need not identify specific conflicts between the Cabinet's permit conditions and federal law in order to establish preemption. The district court's failure to make specific