RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0182P (6th Cir.)
File Name: 03a0182p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

BARBARA HABICH,
    *Plaintiff-Appellant,*

    *v.*

CITY OF DEARBORN; JOHN
CASCARDO; and JOHN NAGY,
    *Defendants-Appellees.*

No. 01-2565

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-74221—John Feikens, District Judge.

Argued: May 1, 2003

Decided and Filed: June 6, 2003

Before: MOORE and ROGERS, Circuit Judges; HOOD,
District Judge.[*]

———————————

### COUNSEL

**ARGUED:** Elizabeth A. Downey, Bingham Farms,
Michigan, for Appellant. John W. Tanner III, DEARBORN
CITY LEGAL DEPARTMENT, Dearborn, Michigan, for

———————————

[*] The Honorable Joseph M. Hood, United States District Judge for the
Eastern District of Kentucky, sitting by designation.

Appellees. **ON BRIEF:** Elizabeth A. Downey, Bingham
Farms, Michigan, for Appellant. John W. Tanner III, Debra
C. Walling, DEARBORN CITY LEGAL DEPARTMENT,
Dearborn, Michigan, for Appellees.

    MOORE, J., delivered the opinion of the court, in which
HOOD, D. J., joined. ROGERS, J., joined in all of J.
MOORE's opinion except footnote 2.

———————————

### OPINION

———————————

    KAREN NELSON MOORE, Circuit Judge. The
proceedings that led to this appeal have involved three issues.
In federal court, plaintiff Barbara Habich alleged that in one
incident, the City of Dearborn had violated her right to the
equal protection of the laws by refusing to sell a piece of
property to her in the same manner that it had handled
previous sales to her neighbors. Habich also alleged in
federal court that in another incident, the City had violated her
right to due process when it padlocked her home without
granting her a hearing. Separately, in a state administrative
proceeding, local building officials argued that Habich's
property was due for an inspection. The district court stayed
— and then *sua sponte* dismissed — proceedings on the first
two issues, on the theory that the issues raised in Habich's
§ 1983 action belonged in the state proceedings. Because the
district court's actions denied Habich her preferred federal
forum for her § 1983 suit and are unsupported by traditional
abstention principles, we **REVERSE** the district court's
decisions to abstain and to dismiss Habich's suit. We also
**REVERSE** the district court's decision not to assert
jurisdiction over the attorney fees issue, and we **AFFIRM** the
decision refusing to assert jurisdiction over the appeal from
the state administrative proceeding.

## I.  BACKGROUND

Just as this case involves three legal issues — Habich's equal protection claim, her due process claim, and the city's desire to inspect her home — so too it arises out of three sets of facts. All of the facts involve Barbara Habich, the City of Dearborn, and the house that Habich has owned for several decades. The first set of facts involves a vacant piece of city-owned property adjoining Habich's house. Several years ago, Habich alleges, the City sold a similar fifteen-foot-wide lot to Habich's neighbor, whose property abutted the other side of the vacant lot, but the city has since refused to sell the strip abutting Habich's property to her in a similar fashion. The second set of facts involves the City's padlocking of Habich's home on September 6, 2000. Without notice or a hearing, city officials had padlocked the doors to Habich's home and posted notices saying that the home could not be occupied without a certificate of occupancy. Finally, the third set of facts came after the padlocks were ultimately removed, as the City sought to inspect Habich's home. The City argued, and Habich denied, that Habich had rented the property out, and that a local ordinance required an inspection and a certificate of occupancy.

On September 21, 2000, while the padlocks were still on her home, Habich filed this § 1983 action in federal district court. Habich raised two legal issues in this suit. First, she argued that the City's refusal to sell her the vacant lot, while selling a similar lot to her neighbor, violated the Equal Protection Clause of the Fourteenth Amendment. Second, she argued that the City's padlocking of her home without warning violated her rights under the Fourth, Fifth, and Fourteenth Amendments.

Habich also filed a motion for a preliminary injunction, seeking to have the padlocks removed so that she could access her home. The district court held a hearing on this motion on September 22, 2000. At the hearing, the City indicated that it had padlocked the doors without holding a hearing because, as it understood the facts, Habich had in fact

rented the house to a tenant, meaning that a certificate of occupancy was required, the tenant was moving out, and Habich intended to move back in before the City could inspect the house. Although this was not the paradigmatic "emergency" that would justify a padlock without a hearing, the City feared the Habich did not intend to permit an inspection. The district court, referring to "pre-deprivation law" that requires a hearing before a city may take drastic measures, instructed the City, "Take the padlock off and give her a hearing. . . . [I]f the hearing establishes that it's necessary to — to get into that house to make an inspection, and I'm willing to believe that it is, follow those procedures. At the end you'll get what you want." J.A. at 104-05. Thus although the court explicitly declined to issue a preliminary injunction, it did tell the City to take the padlock off, permit Habich to enter the dwelling, and hold a hearing on whether an inspection for the certificate of occupancy was warranted.

Hearings before the Building Board of Appeals ("BBA") on whether the City could inspect the home began a few days later. The hearings focused on whether Habich actually lived in the house or was renting it out, and the BBA ultimately determined that a landlord-tenant relationship had been formed. The BBA concluded that the City thus had a right to inspect the house, but that the Board would not authorize the building department to lock Habich out. Apparently unsure of how to proceed, Habich petitioned the district court to review the BBA's decision, and she says that out of an abundance of caution, she also filed an appeal from the BBA decision to the Wayne County Circuit Court. Habich additionally filed in the district court a motion for attorney fees under 42 U.S.C. § 1988, presumably on the theory that her motion for a preliminary injunction had been the catalyst that, based on the district court's instruction, forced the City to remove the padlocks from her home.

The district court held a hearing on November 29, 2000, on Habich's petition to review the BBA decision and her motion for attorney fees. As the transcript of this hearing is our primary record of the district court's handling of the case, we

shall summarize the transcript in detail. On the petition to review the BBA decision, the district court indicated that there was no basis for the district court to assert jurisdiction over an appeal from the BBA. "[Y]ou came here originally on an issue that has now been resolved," the court told Habich's counsel, "and that is to say without a hearing your client's house was padlocked, but that was resolved." J.A. at 71. The court then asked, however, since the padlocks had been removed, how the court could "take pendent jurisdiction over a matter that really is not federal any longer in nature?" J.A. at 72. Habich's counsel agreed that the issues raised in the preliminary injunction had gone away, but counsel reminded the court that the complaint had raised two federal issues:

> First of all, it sought any damages, whether normal or otherwise, for locking her out of her house without any notice or a hearing or any process of any sort.
> Secondly, we also included her equal protection claim, because it's our contention that the reason that this action is being taken against her, is that the City is trying to acquire her property against her wishes and is not treating her equally to her neighbor.

J.A. at 73. The court replied, however, that even if that were true, "that's a state issue, not a federal issue," and her suit should proceed in state court. J.A. at 74.

> What you came here for initially in your complaint was for relief from the lockout without a hearing. . . . What you were really aggrieved by was that she was locked out and that this was done because the City had in your view, unfortunately, said she was renting the property, and, therefore, there had to be a Certificate of Occupancy if I recall correctly, right? That was the issue before me?

J.A. at 74-75. Counsel then suggested that although the certificate of occupancy issue related to the motion for preliminary injunction, the complaint included an equal protection claim. Noting that Habich's appeal of the BBA

decision granting an inspection had also been filed in the state courts, the district court asked, "why not go there and argue to your heart[']s content about things that really are underlying this issue; and that is, Dearborn's desire to have your client's property?" J.A. at 75. The court then expressed its view that the case should not be in two courts, and that it would "think about abstention" and let Habich proceed on her federal claims in state court. J.A. at 75-76.

The district court then decided to abstain from hearing Habich's § 1983 suit. Citing *Carroll v. City of Mount Clemens*, 139 F.3d 1072 (6th Cir. 1998), and referring to *Younger* abstention, the court told Habich that, "the relief that you seek you could obtain in the state court." J.A. at 79. Further, because the state court could also hear any constitutional issues that Habich raised, and Habich could amend her complaint to bring such claims in state court,[1] the district court said that res judicata would bar her from returning to federal court. The court thus directed the City's counsel to draft an order abstaining, based on *Younger*, and staying the proceedings pending the outcome of the state action. The court also stayed Habich's motion for attorney fees, saying that the matter would best be left to the state court that ultimately resolved the case, and that the parties could tell the state court that the federal court "didn't decide any of these issues that were presented here, including the request for attorney fees." J.A. at 89. The court entered an order staying the case and ordering the attorney fees issue to be resolved in state court.

---

[1] Habich noted, at this point, that there was no complaint for her to amend in state court, as she had instead filed "a petition for review of the hearing result." J.A. at 83. The City's attorney concurred, noting that, "procedurally, she'll have to file a complaint, move to consolidate, because what she has is a claim of appeal. A claim of appeal is not [a] separate claim in itself." J.A. at 85-86. The district court expressed the view that, regardless, nothing prevented her "from arranging the case in light of [her] observation now that [she] didn't ask for all of the relief there that [she] might have asked for." J.A. at 83.

After accepting the appeal from the BBA, the Wayne County Circuit Court reversed the BBA's decision permitting the inspection and ordered the City to pay Habich's attorney fees in the amount of $18,202.53. The City appealed to the Michigan Court of Appeals, arguing that because the state action involved only an issue of a state housing inspection, and was in no way based on § 1983, no attorney fees were permitted under § 1988.

Fearing that her victory in state court would prove illusory if, after she was ordered to bring her case to state court, the state court found itself without jurisdiction, Habich filed a motion in federal court seeking to hold the City in contempt. Deciding that motion without oral argument, the district court issued a brief order stating that it had "specifically declined to take jurisdiction of the appeal and ordered that plaintiff's motion for attorney fees should be resolved in Wayne County Circuit Court." J.A. at 13 (10/18/01 Order). Then, without further explanation, the district court stated, "[T]he case before me is dismissed." J.A. at 13. The district court denied Habich's motion for reconsideration, stating, "What neither the plaintiff nor her counsel is willing to accept or to understand is that this now is a matter pending in the state judicial system." J.A. at 65. Habich timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.  ABSTENTION

Although the district court appeared to base its abstention decision solely on the *Younger* doctrine, counsel for the City also indicated at oral argument that *Burford* abstention could also supply the district court's actions, so we address both doctrines here. We review de novo a district court's decision to abstain under *Younger* or *Burford*. *Traughber v. Beauchane*, 760 F.2d 673, 676 (6th Cir. 1985) (reviewing *Younger* abstention); *MacDonald v. Village of Northport*, 164

F.3d 964, 967 (6th Cir. 1999) (reviewing *Burford* abstention).[2]

Although the *Younger* and *Burford* abstention doctrines require different analyses, both are inapplicable here for essentially the same reason. Simply put, the state court proceedings involved factual and legal issues that had no relevance to Habich's federal suit. Habich's § 1983 action focused entirely on events that occurred up to and including the City's padlocking of Habich's house: specifically, the earlier refusal to sell adjacent property to her, and the padlocking without notice or a hearing. The issues involved in this action were entirely federal, requiring the court to determine whether the City had violated Habich's equal protection and due process rights. In contrast, the proceedings in the state court focused on how the City could proceed *after* the padlocks had been removed. These were entirely state issues: had a landlord-tenant relationship been formed, was a certificate of occupancy required, and could an inspection be performed. As the federal suit would in no way interfere with the state proceedings, there was no basis for abstention. We address the two abstention doctrines in turn.

### A.  *Younger* Abstention

Abstention under *Younger v. Harris*, 401 U.S. 37 (1971), may occur when three criteria are met: there are state proceedings that are (1) currently pending; (2) involve an important state interest; and (3) will provide the federal

---

[2]It appears that in a handful of cases, panels of this court have suggested that abstention decisions applying the *Burford* doctrine are reviewed for abuse of discretion. *See Caudill v. Eubanks Farms, Inc.*, 301 F.3d 658, 660 (6th Cir. 2002); *United States v. Kentucky*, 252 F.3d 816, 825 (6th Cir. 2001). When an opinion of this court conflicts with an earlier precedent, we are bound by the earliest case. *Darrah v. City of Oak Park*, 255 F.3d 301, 310 (6th Cir. 2001). Our decisions reviewing *Burford* abstention de novo, *MacDonald*, 164 F.3d at 967, predate our decisions reviewing *Burford* abstention for an abuse of discretion, *Kentucky*, 252 F.3d at 825. De novo review of *Burford* abstention is thus the rule of the circuit.

plaintiff with an adequate opportunity to raise his or her constitutional claims. *Hayse v. Wethington*, 110 F.3d 18, 20 (6th Cir. 1997). The key question here is whether the state proceeding would afford Mrs. Habich an adequate opportunity to raise her constitutional claims. Because the state proceeding involved only the collateral issue of whether Habich was renting her property to a tenant, and thus the *prospective* issue of whether the City could inspect the house for a certificate of occupancy, there would be no opportunity for Habich to raise her constitutional claims, which raised the questions of whether her constitutional rights *had been* violated. *Younger* abstention was inappropriate.

The state proceedings focused on whether, in light of the City's occupancy rules that permit the City to inspect rental properties, Habich had rented out her home. That is, although all agreed that another person had lived there in Habich's absence and had paid Habich some amount of money, Habich contended that this was not a landlord-tenant relationship, but an arrangement in which she had helped out a friend in need. If Habich were correct that there had been no landlord-tenant relationship, then the City would have no right to inspect, because there would have been no change in occupancy. Accordingly, testimony before the BBA focused on the alleged tenant and her understanding with Habich. The incidents leading up to and including the padlocking were discussed at various points as background, and to explain to the BBA the lawsuit going on in the federal district court, but the BBA proceedings themselves were prospective, to determine whether — now that the padlocks had been removed — the City could inspect the house. Both Habich and the City agreed that the padlocking incident was not before the BBA. J.A. at 335-38.[3] Thus whether the

---

[3] A board member and the parties made this explicit. The BBA member asked, "We just have to determine whether the city should have the right to inspect or not?" and Habich's counsel replied, "I do not believe it's proper at this time for the city to authorize the building department to padlock this woman out of her house." The City's lawyer agreed, saying, "That issue is not before the board." J.A. at 338.

padlocking without a hearing had violated Habich's due process rights, and whether the City's earlier refusal to sell her the fifteen-foot-wide lot had violated her right to equal protection, were irrelevant to the case before the BBA.

The federal constitutional claims that Habich brought in her § 1983 suit were thus "collateral" to the state proceedings. That is, the issues in Habich's federal suit could neither be proven as part of the state case-in-chief nor raised as an affirmative defense. In *Gerstein v. Pugh*, 420 U.S. 103 (1975), the Supreme Court refused to apply *Younger* abstention to federal suits that raise issues not part of the state case. *Id.* at 108 n.9. In *Gerstein*, a state criminal defendant brought a federal § 1983 suit challenging his lengthy pretrial detention without a hearing. Because the legality of the pretrial detention "could not be raised in defense of the criminal prosecution," the Court ruled that *Younger* abstention did not apply. *Id.* We have applied this rule in a number of contexts, and we have indicated that "[t]he critical questions" include "whether the issue raised is collateral to the principal state proceeding," *Parker v. Turner*, 626 F.2d 1, 8 (6th Cir. 1980), or, framed a different way, whether the federal plaintiffs have an "opportunity to raise their claim in the state proceedings," *J.P. v. DeSanti*, 653 F.2d 1080, 1084 (6th Cir. 1981).

Contrary to the district court's suggestion, whether the federal plaintiff has an "opportunity" to have the issue addressed in state court for *Younger* purposes does not turn on whether the plaintiff could file a new complaint in state court that alleged her federal claims. Such a rule would not only extend *Younger* abstention far beyond its purpose of preventing "federal intervention in state judicial processes," *Moore v. Sims*, 442 U.S. 415, 423 (1979), but it would be contrary to *Gerstein* and its progeny. We are aware of no case in which a federal plaintiff is deemed to have the "opportunity" to have his or her federal claim heard in a state proceeding solely because the plaintiff could have amended an existing complaint or filed a new complaint in state court. If that were the rule, *Younger* abstention would almost always

be appropriate, because there are few situations in which a federal plaintiff would not be able to file the federal suit in state court. In *Flynt v. Leis*, 574 F.2d 874 (6th Cir. 1978), *rev'd on other grounds*, 439 U.S. 438 (1979), for example, the federal court refused to abstain when lawyers who were denied a hearing on their pro hac vice motion sought to enjoin a state criminal trial from proceeding until the state granted them such a hearing, because the attorneys were "unable" to raise the pro hac vice issue in state court. *Id.* at 881. In that case, abstention was inappropriate, even though there could be no question that the federal plaintiffs could have filed a state complaint containing their federal claim. Indeed, *Gerstein* itself involved federal plaintiffs who could have filed their § 1983 suit in state court, but the Court was apparently unmoved that such a possibility provided a sufficient opportunity. Unless the issue in the plaintiff's federal suit would be resolved by the case-in-chief or as an affirmative defense to the state court proceedings that exist, it cannot be said that the state proceedings afford the federal plaintiff an adequate opportunity to have his or her claim heard for *Younger* purposes.

Here, the City appears to have conceded that Habich's due process and equal protection claims would not have arisen in the state proceedings as those proceedings existed. Indeed, Habich could not even have brought her federal claims in the state proceedings by amending her complaint, because she had never filed a state complaint. Rather, as the City suggested in the district court hearing, she would have had to file a complaint and then move to consolidate that new case with her already-filed petition for review of the BBA decision. Because this does not provide the "opportunity" for review that *Younger* requires, *Younger* abstention was inappropriate. *See also England v. Louisiana State Bd. of Med. Exam'rs*, 375 U.S. 411, 415 (1964) (recognizing the "fundamental objections to any conclusion that a litigant who has properly invoked the jurisdiction of a Federal District Court to consider federal constitutional claims can be compelled, without his consent and through no fault of his

own, to accept instead a state court's determination of those claims").

## B. Burford Abstention

The City also suggested at oral argument that abstention may have been appropriate under the doctrine of *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). The *Burford* doctrine provides that

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Public Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989) ("*NOPSI*") (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)). Applying this standard, we find *Burford* abstention unavailable for a number of reasons. Most obviously, acting on Habich's equal protection and due process claims would in no way "interfere with the proceedings or orders of state administrative agencies." *Id.* As discussed above, the state agency proceedings were to determine whether state law required an inspection and certificate of occupancy; Habich's § 1983 suit focused on the City's earlier refusal to sell nearby property, which had *no* relationship to the state proceedings, and on the City's previous padlocking of Habich's home without notice and a hearing. On the latter issue, a federal court's determination that Habich was or was not entitled to a pre-deprivation hearing could in no way interfere with a state agency's determination, following a hearing, that Habich had acted as a landlord.

Yet even if this threshold issue had been met, neither basis for *Burford* abstention would be met here. First, Habich's § 1983 suit involves no state law issue at all, let alone a "difficult question[] of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," *NOPSI*, 491 U.S. at 361. Habich's equal protection claim will evaluate whether the City violated the Fourteenth Amendment by refusing to sell Habich certain property in a manner that it used for similarly situated residents. Likewise, Habich's due process claim will determine whether Habich received the process she was due before the City padlocked her home. Neither involves a "state-law claim, nor even an assertion that the federal claims are in any way entangled in a skein of state-law that must be untangled before the federal case can proceed." *Id.* (quotation omitted). We have rejected *Burford* abstention based on this first prong in similar circumstances. In *GTE North, Inc. v. Strand*, 209 F.3d 909 (6th Cir.), *cert. denied*, 531 U.S. 957 (2000), we reasoned that *Burford* abstention is inapplicable in a "case that does not concern a disputed issue of state law, but rather a potential conflict between state and federal . . . laws." *Id.* at 921; *see also Caudill*, 301 F.3d at 661 (recognizing that when "the only issue presented was one of federal preemption, which overrides any state interest," *Burford* is not justified). Here, the case against *Burford* is even stronger: the issue is not merely whether a state law is preempted by federal statute, but whether a state action violated constitutional limits. Thus there is "no fear of federal disruption of state administrative processes, because . . . the federal interest [i]s superior." *Caudill*, 301 F.3d at 661. Neither the City nor the district court identified any difficult question of state law that would need to be resolved in Habich's federal suit. *See Rouse*, 300 F.3d at 716 (noting that *Burford* "applies only if a federal court's *decision on a state law issue* is likely to interfere" with state proceedings).

Nor does this case qualify as one in which "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern,"

which could trigger *Burford*'s second prong. *NOPSI*, 491 U.S. at 361. Nothing in Habich's federal suit would disrupt the state's efforts to create a uniform policy governing, for example, landlord-tenant relations. *See Rouse*, 300 F.3d at 716 (rejecting *Burford* when there was not "any basis for concluding that federal review of this matter would be disruptive of Michigan's domestic relations policies"). This case is far different from *Burford*, which involved a federal plaintiff's attempt to enjoin the execution of an order regarding the drilling of certain wells in a heavily-state-regulated oil field. *See Burford*, 319 U.S. at 318-19. Unlike that case, where the federal proceedings could conceivably undermine an entire regulatory scheme that depended on uniformity, *see id.* at 319, the present case simply asks whether the City should have sold a particular piece of property and whether the City should have given Habich more process before it padlocked her home. *See NOPSI*, 491 U.S. at 363 (determining that no intrusion into state affairs justifying *Burford* abstention would result from an examination of a state's regulatory rate order, because although review "may, of course, result in an injunction against enforcement of the rate order, . . . there is no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy") (quotation omitted). The federal action in no way implicates the state's ability to enforce an important policy; rather, it merely calls into question whether particular instances of that enforcement violated constitutional limits. *Burford* abstention is thus inappropriate.

Having found no basis that would justify abstaining from Habich's case, we reverse the district court's decision to do so.[4]

_____

[4] It is also worth noting that even when abstention is appropriate, a district court should stay, not dismiss, the federal suit. *See, e.g.*, *Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995). Although staying the suit instead of dismissing it will often reflect an abundance of caution, leaving the district court with "nothing left to do but clear the case number off of its docket once the state proceedings conclude," staying the suit protects

## III.   REFERRAL OF THE ATTORNEY FEES
CLAIM TO STATE COURT

We also reverse the district court's decision referring Habich's request for attorney fees to state court. Habich had sought attorney fees for the interim relief she had achieved when the district court instructed the City to remove the padlocks from Habich's home, a permissible request under 42 U.S.C. § 1988, but the district court told the parties to bring the claim to state court with the message that the federal court "didn't decide any of these issues that were presented here, including the request for attorney fees." J.A. at 89. Although the Supreme Court has rejected the idea that attorney fees can be awarded if a lawsuit is the "catalyst" that brings about a purely voluntary change in the defendant's behavior that is neither "judicially sanctioned" nor carries "judicial imprimatur," *Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Health and Human Res.*, 532 U.S. 598, 605 (2001), a party may "prevail" if it "obtain[s] a change in the legal relationship of the parties that originated in a court order or that had at least received judicial sanction," *Chambers v. Ohio Dep't of Human Servs.*, 273 F.3d 690, 691 (6th Cir. 2001). Here, Habich argues that she "prevailed" when, although the district court did not issue a formal order on her motion for a preliminary injunction, it did explicitly instruct the City,

---

the plaintiff whose federal claims were not resolved on the merits in state court. *Carroll*, 139 F.3d at 1075-76; *see also Deakins v. Monaghan*, 484 U.S. 193, 202 (1988) ("[E]ven if the *Younger* doctrine requires abstention here, the District Court has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding.").

Also, our decision in *Tingler v. Marshall*, 716 F.2d 1109 (6th Cir. 1983), prohibits a district court from dismissing a suit *sua sponte* unless it has, among other requirements, notified the parties of its intent to do so and given the parties the opportunity to respond, *id.* at 1112. Although *Tingler*'s requirements have been superseded with respect to prisoner lawsuits by the Prison Litigation Reform Act, *In re Prison Litigation Reform Act*, 105 F.3d 1131, 1138 (6th Cir. 1997) (administrative order), they remain in effect for all other *sua sponte* dismissals. *See, e.g., Catz v. Chalker*, 142 F.3d 279, 284-85 (6th Cir. 1998), *amended on other grounds*, 243 F.3d 234 (6th Cir. 2001) (order).

---

"Take the padlock off," J.A. at 104. Accordingly, if the City's removal of the padlocks was done with the necessary judicial imprimatur, 42 U.S.C. § 1988 could authorize attorney fees for the legal fees incurred in achieving that relief. There was no reason that such a claim should have been brought in state court, and the district court should rule on her motion for attorney fees incurred in achieving the initial relief. Of course, should Habich ultimately obtain a monetary judgment on her equal protection and due process claims, those claims would present different bases for attorney fees, independent of her request for fees based on the alleged interim relief.

## IV.   SUPPLEMENTAL JURISDICTION OVER
STATE ADMINISTRATIVE PROCEEDING

The district court also refused to exercise supplemental jurisdiction over Habich's appeal from the BBA's decision permitting an inspection. We review a district court's refusal to exercise supplemental jurisdiction for abuse of discretion. *Hankins v. The Gap, Inc.*, 84 F.3d 797, 802 (6th Cir. 1996). Supplemental jurisdiction "'is a doctrine of discretion, not of plaintiff's right.'" *Baer v. R & F Coal Co.*, 782 F.2d 600, 603 (6th Cir. 1986) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Habich wanted the district court to review the BBA's decision that, under a local ordinance, Habich's home was being used as a rental and thus required an inspection and a certificate of occupancy. Although it is possible to remove to federal court a state court suit that challenges a state administrative ruling on federal and state grounds, *see City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997), Habich's petition for review of the BBA decision did not necessarily involve any of the "operative fact[s]," *Gibbs*, 383 U.S. at 725, at issue in the federal suit. The federal suit involved the failure to hold a hearing and the refusal to sell some land; the state proceeding involved the nature of an owner-occupant relationship. The suits involved the same agency and same piece of property, but it was not an abuse of discretion to refuse to review the state administrative proceeding under 28 U.S.C. § 1367. We

thus affirm the district court's refusal to assert supplemental jurisdiction over the state-law challenge to the BBA proceeding.

## V.  CONCLUSION

Although the City's desire to inspect Habich's property was an issue properly heard in state court, there was no reason for her § 1983 suit and motion for attorney fees to have been sent there as well.   We thus **REVERSE** the district court's decision to abstain from and to dismiss the merits of Habich's claims and her motion for attorney fees.   We **AFFIRM** the district court's decision refusing to exercise supplemental jurisdiction over the appeal from the BBA.