**Barbara HABICH, Plaintiff,**

v.

**CITY OF DEARBORN, a municipal Corporation, John Cascardo, in his official and individual capacity, John Nagy, in his official and individual capacity, Defendant(s).**

**No. 00–74221.**

United States District Court,
E.D. Michigan,
Southern Division.

March 26, 2004.

---

Elizabeth A. Downey, Bingham Farms, MI, for Plaintiff.

John W. Tanner, III, Debra A. Walling, Dearborn City Legal Dept., Dearborn, MI, for Defendants.

## OPINION AND ORDER

FEIKENS, District Judge.

Defendants move for summary judgment on the three issues remanded for this Court to decide. *Habich v. City of Dearborn*, 331 F.3d 524 (6th Cir.2003). The issues are as follows:

- whether plaintiff is entitled to attorney's fees for the hearing before this Court where defendants agreed to remove the padlock on the house at 4770 Firestone;

- whether defendants violated plaintiff's due process rights by padlocking the house without a hearing (and whether there is a policy or practice of unconstitutionally doing so); and

- whether defendants violated the equal protection clause by declining .to sell plaintiff a strip of land that abuts her property.

For the reasons explained below, defendants' Motion for Summary Judgment is GRANTED in part, DENIED in part and HELD IN ABEYANCE in part.

## FACTUAL BACKGROUND

The facts of this case have been well developed in various opinions, so I will give only a brief summary here. *See, e.g., Habich*, 331 F.3d 524 (6th Cir.2003); *Habich v. City of Dearborn*, No. 235039, 2003 WL 21419283 (Mich.App. June 19, 2003).

Plaintiff owns a house at 4770 Firestone in Dearborn that was built in the 1940s. Plaintiff's property is bordered by a strip of City land that plaintiff would like to buy to enlarge her own lot. For a period of almost a year, the house was inhabited by Nicole Fickel, whom the plaintiff characterizes as a close family friend and defendants characterize as a paying tenant. Because the Michigan courts have determined that Ms. Fickel was in fact a tenant, this Court abides by the law of the case and treats Fickel as a tenant. *Habich v. City of Dearborn*, No. 235039, 2003 WL 21419283 (Mich.App. June 19, 2003), *cert. denied*, 674 N.W.2d 378 (Table) (Mich. 2004). Because Ms. Fickel was a tenant, the City was authorized by law to conduct a safety inspection of the 4770 Firestone home. *Id.*, at 378.

Defendants padlocked the structure after Ms. Fickel moved out so that plaintiff could not reoccupy the house without an inspection. (Defs.' Mt. for Summ. J., Ex. A at 5 (Tr. of Building Board of Appeals No. 138)). After the padlocking, plaintiff requested a preliminary injunction from this Court ordering defendants to remove the lock, and I held a hearing on that motion on 22 Sept. 2000.

## ANALYSIS

*Motion for Summary Judgment Standard*

Summary judgment is proper if "the pleadings, depositions, answers to inter-

rogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must view the evidence and any inferences drawn from the evidence in a light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted), *Redding v. St. Eward,* 241 F.3d 530, 532 (6th Cir.2001). The burden on the moving party is satisfied where there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

## I. Attorney's Fees

■ Under 42 U.S.C.1988, a "prevailing party" should receive reasonable attorney's fees. The crux of the issue before me is whether plaintiff "prevailed" at the 22 Sept. 2000 hearing, even though a formal order did not issue from this Court. Defendants claim that because no formal order issued, they "voluntarily" decided to remove the padlock and therefore plaintiff should not be awarded attorney's fees. (Defs.' Mt. for Summ. J. 15.)

The Supreme Court has held that "a defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change [to allow recovery of attorney's fees]." *Buckhannon Bd. and Care Home, Inc. v. W.V. Dep't of Health and Human Resources,* 532 U.S. 598 at 604, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (emphasis in original). The Court held that judgments on the merits and court-ordered consent decrees would qualify for attorney's fees, but surviving a 12(b)(6) motion for dismissal, or winning reversal of a directed verdict, or "acquir[ing] a judicial pronouncement that the defendant has violated the Constitution unaccompanied by *'judicial relief'*" would not. *Id.* at 606, 121 S.Ct. 1835 (emphasis in original).

The transcript of the 22 September 2000 hearing indicates that no judicial relief of the kind required by the Supreme Court in *Buckhannon* issued. At one point, the City's attorney said that it had "been trying to take [the padlock] off," and I said, "Now all I'm asking you to do is continue." (Tr. at 17.) At the close of the hearing, I said, "I'm not going to issue a preliminary injunction. That should tell you something. I don't think this is an emergency that requires drastic judicial interference. I think that the City is trying now to meet its obligation to give her a hearing and let's follow that course." (Tr. at 19.) The last statement from the bench during the hearing was the following: "in light of that the record will show what we're going to do and I won't issue a preliminary injunction." (Tr. at 21.)

The Supreme Court's decision in *Buckhannon* stresses the importance of a formal rather than an informal victory on the merits. I clearly stated from the bench that I was withholding judicial interference due to defendants' intention to remove the padlock. Therefore, I find that plaintiff did not qualify as a "prevailing party" at the 22 September 2000 hearing and therefore cannot recover attorney's fees. Defendants' motion for summary judgment on this claim is GRANTED.

## II. Due Process Violation

■ Plaintiff alleges defendants violated her due process rights by padlocking the

house without notice or a hearing. Defendants claim qualified immunity on this issue. "The doctrine of qualified immunity shields government officials performing discretionary functions from civil damages liability as long as their actions are reasonable in light of the legal rules that were clearly established at the time of their conduct." *Flatford v. City of Monroe,* 17 F.3d 162 at 166 (6th Cir.1994), citing *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Prior to an eviction, notice and hearing are required unless there is an "extraordinary situation" that requires postponing the hearing until after the eviction. *Fuentes v. Shevin,* 407 U.S. 67 at 82, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).[1] "A prior hearing is not constitutionally required where there is a special need for very prompt action to secure an important public interest and where a government official is responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in a particular instance." *Flatford v. City of Monroe,* 17 F.3d 162 at 167 (1994).

Applying the holding from *Fuentes,* the Sixth Circuit found that if a reasonable building inspector could conclude that there is an imminent threat of safety to occupants of a dwelling, then there is no requirement of a hearing before the eviction. *Flatford, id.* When a reasonable inspector can so conclude, even if that conclusion is later proved erroneous, a due process claim must fail because the qualified immunity attaches. *Id.*

The City argues that it is entitled to immunity because defendant Cascardo, an inspector, responded to a complaint about the poor condition of the rental home. (Defs.' Mt. for Summ. J., 8.) Defendants allege that the home was not up to building codes. Moreover, according to the City attorney at the 22 Sept. 2000 hearing, the City had had complaints about rat infestation and the plumbing and knew there were holes in the home. (Tr. at 8, 10.) Plaintiff argues that no 'emergency' situation existed. (Pl.'s Br. Regarding Remaining Issues, 12.)

There is a question of fact as to whether Cascardo had a belief that the building code violations posed an imminent threat to the occupants, and if so, whether that belief was reasonable. Because there is a question of material fact in dispute, I deny defendants' motion for summary judgment on the due process claim.

Plaintiff's complaint further alleges that the City has a custom or policy of prohibiting people from entering their property without notice. (Compl. ¶ 20.) Plaintiff also alleges the City's failure to train employees who have padlocking authority renders them liable under § 1983. (Pl.'s Br. in Opp. to Defs.' Mt. for Summ. J, 13–4.) At the time I asked for summary judgment motions, plaintiff had not had time for discovery that would allow her to offer evidence in support of these claims. (Pl.'s Br. in Opp. to Defs.' Mt. for Summ.

1. Defendants claim that this Court cannot find a violation of due process because a state court has already found that plaintiff did not occupy the home, so under the Rooker–Feldman doctrine and the principle of *res judicata,* this Court cannot find that due process was violated. (Br. in Support of Defs.' Mt. for Summ. J., 10.) Even if a home is being rented, governmental interference with a landlord's property right through padlocking can be a deprivation of property without due process of law if there is no notice and no "extraordinary situation where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *United States v. James Daniel Good Real Property,* 510 U.S. 43 at 53, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), quoting *Fuentes, id.* Thus, the state court's ruling that Ms. Habich was a landlord at the time of the padlocking does not affect analysis of the due process claim.

J, 13–4.) Therefore, I hold in abeyance the Motion for Summary Judgment as to the § 1983 allegations related to the due process claim.

### III. Equal Protection Violation

■ In order to prevail in an equal protection case in which no protected class is at issue, as is true in this case, the plaintiff must allege that she has been intentionally treated differently from others that are similarly situated and that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000).

■ Plaintiff here alleges that because the City sold her neighbor a 15–foot strip of land abutting his property, but declined to do the same for her, her equal protection rights have been violated. Defendants offer a rational reason for treating plaintiff differently: at some point in the future, as part of "Operation Eyesore," the City wishes to buy her property, consolidate the two parcels together, and sell the land to a buyer willing to build a new, larger home. (Defs.' Mt. for Summ. J. 13.) The City says it does not wish to acquire her neighbor's home at some future date, because it already meets the City's goals for the neighborhood. (Defs.' Br. in Support of Mt. for Summ. J., 14.) Plaintiff does not dispute that her neighbor's home meets this standard, but argues that the City does not have a rational basis because the program is unconstitutional, at least as applied to her home.

■ Under Michigan law, acquisition of private property for clearance and redevelopment is a permissible public purpose. *Amen v. City of Dearborn*, 718 F.2d 789 (6th Cir.1983), *cert. denied*, 465 U.S. 1101,

104 S.Ct. 1596, 80 L.Ed.2d 127 (1984).[2] Plaintiff argues that the Sixth Circuit's opinion in *Amen* was limited to the clearance of entire areas, and did not address whether one home can be acquired under this program. (Pls.' Supplemental Br., 1.) However, to find that a City could not purchase a single structure as part of a larger program would require me to find that the Sixth Circuit's finding of constitutionality depended on a simultaneous and large scale execution of an urban revitalization program. In other words, I would have to find that the City is forbidden to begin or end its program with a single structure that is causing blight. I do not believe the Sixth Circuit's opinion supports such a reading.

Because the desire to clear and redevelop land is a permissible public purpose, the government does have a rational basis for choosing not to sell Ms. Habich the land even though it did sell a similar strip of land to her neighbor. Therefore, I GRANT defendants' motion for summary judgment on the equal protection claim.

### CONCLUSION

I GRANT defendants' Motion for Summary Judgment on the issues of attorney's fees and the equal protection violation. I DENY defendant's Motion for Summary Judgment on plaintiff's due process claim for her own padlocking. I HOLD IN ABEYANCE the Motion for Summary Judgment on the § 1983 claim that Dearborn has an unconstitutional policy or practice of evictions in violation of due process rights.

**IT IS SO ORDERED.**

---

**2.** *See also City of Las Vegas Downtown Redevelopment Agency v. Pappas*, 76 P.3d 1 (Nev. 2003), *cert. denied*, 2004 WL 35806 (2004) (holding that combating blight is a permissible public purpose, and upholding the taking of property for that purpose, even when the specific property taken is not in a blighted condition).