RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0150p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

JASON COUNTS; DONALD KLEIN; OSCAR ZAMORA;
JASON SILVEUS; JOHN MISKELLY; THOMAS HAYDUK;
JOSHUA RODRIGUEZ; BASSAM HIRMIZ; CHRISTOPHER
HEMBERGER; DEREK LONG, individually and on behalf
of themselves and all others similarly situated,
                               *Plaintiffs-Appellants*,

             *v.*

       No. 24-1139

GENERAL MOTORS, LLC; ROBERT BOSCH LLC,
                               *Defendants-Appellees.*

———————————

Appeal from the United States District Court for the Eastern District of Michigan at Bay City.
No. 1:16-cv-12541—Thomas L. Ludington, District Judge.

Argued: March 18, 2025

Decided and Filed: June 6, 2025

Before: GRIFFIN, KETHLEDGE, and BUSH, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Garth Wojtanowicz, HAGENS BERMAN SOBOL SHAPIRO, LLP, Seattle, Washington, for Appellants. Jay P. Lefkowitz, KIRKLAND & ELLIS LLP, New York, New York, for Appellee General Motors. Patrick Swiber, CLEARY, GOTTLIEB, STEEN & HAMILTON, LLP, New York, New York, for Appellee Robert Bosch LLC. **ON BRIEF:** Garth Wojtanowicz, Steve W. Berman, HAGENS BERMAN SOBOL SHAPIRO, LLP, Seattle, Washington, Christopher A. Seeger, SEEGER WEISS LLP, Ridgefield Park, New Jersey, Shauna B. Itri, SEEGER WEISS LLP, Philadelphia, Pennsylvania, James E. Cecchi, James A. O'Brien III, CARELLA, BRYNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C., Roseland, New Jersey, for Appellants. Jay P. Lefkowitz, KIRKLAND & ELLIS LLP, New York, New York, Renee D. Smith, Jeffrey S. Bramson, Cole T. Carter, KIRKLAND & ELLIS LLP, Chicago, Illinois, for Appellee General Motors. Abena A. Mainoo, Carmine D. Boccuzzi Jr., CLEARY, GOTTLIEB, STEEN & HAMILTON, LLP, New York, New York, Matthew D.

Slater, CLEARY GOTTLIEB STEEN & HAMILTON LLP, Washington, D.C., William R. Jansen, Jonathan E. Lauderbach, WARNER NORCROSS & JUDD LLP, Detroit, Michigan, for Appellee Robert Bosch LLC. Jonathan S. Martel, ARNOLD & PORTER KAYE SCHOLER LLP, San Francisco, California, for Amici Curiae.

———————————

## OPINION

———————————

KETHLEDGE, Circuit Judge. The plaintiffs appeal the district court's judgment in favor of the defendants as to their claims that GM and Bosch misled consumers regarding the emissions generated by certain Chevrolet Cruze vehicles. We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

### I.

### A.

New motor vehicles generally cannot be sold in the United States without a "certificate of conformity," which is the EPA's certification that a vehicle complies with all federal emissions standards. *See* 42 U.S.C. §§ 7522(a)(1), 7525(a); 40 C.F.R. § 86.1854-12(a)(1). As part of the certification process, manufacturers must disclose whether a vehicle has any "auxiliary emission control devices" (AECDs), which for various reasons can increase vehicle emissions under certain operating circumstances. *See* 42 U.S.C. § 7525; 40 C.F.R. §§ 86.127-12, 86.1844-01(d)(11).

AECDs use software to sense conditions like temperature, speed, or engine RPMs "for the purpose of activating, modulating, delaying, or deactivating the operation of any part of the emission control system." 40 C.F.R. § 86.082-2. A manufacturer's disclosures must provide "a detailed justification of each AECD that results in a reduction in the effectiveness of the emission control system, and rationale for why it is not a defeat device." 40 C.F.R. § 86.1844-01(d)(11). A "defeat device," in turn, is an AECD that unjustifiably "reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use." 40 C.F.R. § 86.004-2. A defeat device, therefore, operates to defeat the proper functioning of emission control system, as determined by

the EPA; and the EPA may not issue a certificate of conformity for a vehicle equipped with one. 40 C.F.R. § 86.1844-01(g)(5).

General Motors completed this regulatory process for the diesel Cruzes at issue here. As part of its application to the EPA, GM disclosed 90 pages of information about the AECDs in these vehicles. Those disclosures included, as relevant here, separate sections about the AECDs for two emission-control systems—namely, exhaust gas recirculation and selective catalytic reduction—that reduce emissions of nitrogen oxides (NOx). After reviewing GM's submissions, the EPA's Administrator issued certificates of compliance for all the Cruze vehicles at issue here. *See generally* 42 U.S.C. § 7525(a)(3). Thereafter, GM advertised to consumers that the Cruzes featured "Clean Diesel" technology.

B.

1.

The plaintiffs brought this suit in 2016, asserting various types of fraud claims under the laws of 30 states, as well as claims under the Racketeer Influenced and Corrupt Organizations (RICO) Act. The fraud claims were based on five theories: namely, that the Cruzes "emit levels of NOx many times higher than (i) their gasoline counterparts, (ii) what a reasonable consumer would expect, (iii) what GM had advertised, (iv) the [EPA]'s maximum standards, and (v) the levels set for the vehicles to obtain a Certificate of Conformity that allows them to be sold in the United States." First Amended Complaint ¶ 2. The Cruzes produced those higher emissions, the plaintiffs alleged, "by turning off or turning down emissions controls when the software in these vehicles senses they are not in an emissions-testing environment." *Id*. The allegations here thus sought to mimic the ones that had recently been lodged against Volkswagen.

In the years since the plaintiffs filed their complaint, however, the district court has winnowed their claims. The district court first held, in deciding a motion to dismiss, that claims based on the plaintiffs' fourth and fifth theories—which reference the EPA's standards directly—were preempted by the Clean Air Act. *Counts v. General Motors, LLC*, 237 F. Supp. 3d 572, 589–90 (E.D. Mich. 2017). The plaintiffs have since abandoned those theories.

In the same order, the court held that claims based on the plaintiffs' first three theories were not preempted. *Id*. at 592. But the court narrowed the factual bases on which the plaintiffs could seek to prove claims based on those theories. Specifically, the court held that GM's affirmative representations in its advertising—*e.g.*, statements about "clean diesel" or the "cleanliness" of the Cruzes' emissions—were nonactionable puffery. *Id*. at 597–98, 600–01. Likewise nonactionable, the court held, were ads stating that the Cruze "generates at least 90% less nitrogen oxide and particulate emissions when compared to previous generation diesels." *Id*. at 598–99. The plaintiffs have not challenged those determinations either.

After the close of discovery—more than four years after the suit was brought—the defendants moved for summary judgment on their remaining claims. The district court held that claims based on their first theory—that a reasonable consumer would expect that the diesel Cruzes would have lower emissions than their gasoline counterparts—were too implausible to proceed. *Counts v. General Motors, LLC*, 606 F. Supp. 3d 678, 693 (E.D. Mich. 2022). That determination too the plaintiffs have not challenged.

The plaintiffs' remaining claims, as the district court described them then, all "hinge[d] on whether Defendants fraudulently concealed one or more defeat devices" in the plaintiffs' Cruzes. *Id*. at 702. On that theory, the court held that the plaintiffs had presented evidence creating a genuine issue of material fact: specifically that, based on the record before it, "a reasonable juror could find by a preponderance of the evidence that Plaintiffs relied on the absence of defeat devices when they purchased their diesel Cruzes." *Id.* at 705. To that extent, therefore, the court denied the defendants' motion for summary judgment as to the fraud claims. *Id.* at 706. Separately, the court granted summary judgment to the defendants on the RICO claims, on the ground that the plaintiffs had purchased the Cruzes from dealers rather than directly from GM. *Id*. at 703–05.

2.

A year later, however, our court decided *In re Ford Motor Company F-150 and Ranger Truck Fuel Economy Marketing and Sales Practices Litigation (Ford)*, 65 F.4th 851 (6th Cir. 2023). There too the plaintiffs brought fraud claims, alleging that the gas mileage of F-150 and

Ranger pickups was worse than advertised.  Those advertisements had cited the EPA's mileage estimates—which were themselves based on testing data submitted by Ford and approved by the EPA.  We held that the plaintiffs' claims were preempted on four different grounds.  One was that the plaintiffs' claims "essentially challenge[d] the EPA's [gas-mileage] figures" for the vehicles—because, "even though the EPA exercised its statutory duty and found Ford's testing to be acceptable, a jury would still make its own determination" about whether the EPA's figures were correct.  *Id.* at 863.  Another reason, as relevant here, was that "allowing juries to second-guess the EPA's fuel economy figures would permit them to rebalance the EPA's objectives" as to how the testing was conducted.  *Id.*

As a result of our decision in *Ford*, the district court in this case revisited its earlier determination that the plaintiffs' claims remaining after the court's summary-judgment order (which we call the "plaintiffs' remaining claims") were not preempted.  Those claims, to reiterate, were based on two "theories":  namely, that the Cruzes' NOx emissions were higher than "(ii) what a reasonable consumer would expect" and "(iii) what GM had advertised."  After ordering the parties to brief the issue, the court held that, under *Ford*, the plaintiffs' remaining claims were preempted—specifically on grounds of conflict preemption.  The court reasoned that, "[w]ithout the CAA and its regulations, Plaintiffs would have no basis for their claims"; and that, under *Ford*, "it is for the EPA—no one else—to evaluate" whether the Cruzes' emissions systems complied with the EPA's regulations.  *Counts v. General Motors, LLC*, 681 F. Supp. 3d 778, 785–86 (E.D. Mich. 2023).  The court therefore dismissed the plaintiffs' remaining fraud claims and entered judgment in favor of the defendants.  This appeal followed.

II.

A.

Plaintiffs argue that their remaining fraud claims are not preempted.  We review de novo the district court's decision that they were.  *Ford*, 65 F.4th at 859.

State law is preempted on conflict grounds if it makes compliance with federal law "impossible," or if the state law is "an obstacle to the accomplishment of the full purposes and objectives of Congress."  *Id.* at 860 (quoting *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248

(1984)). Whether a state-law claim presents such an "obstacle" depends on the federal statute's text, not on a judge's sense of what the statute's purposes might be. *Id.*; *see also Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 778 (2019) (Gorsuch, J., opinion). A defendant bears the burden of proving preemption. *Ford*, 65 F.4th at 859.

In this appeal, the plaintiffs' principal argument is that yet another recent decision of our court—namely, *Fenner v. General Motors, LLC*, 113 F.4th 585, 593 (6th Cir. 2024)—shows that their remaining fraud claims are not preempted. In *Fenner*, the plaintiffs claimed that the emissions systems of GM's model years 2011–16 Duramax Trucks likewise contained a defeat device that made the NOx emissions of those vehicles higher than customers would have expected. At a certain level of generality, the fraud claims in *Fenner* were based on the same theories the plaintiffs initially based their claims on here: again, that the vehicles "emit levels of NOx many times higher than (i) their gasoline counterparts, (ii) what a reasonable consumer would expect, (iii) what GM had advertised, (iv) the [EPA]'s maximum standards, and (v) the levels set for the vehicles to obtain a Certificate of Conformity that allows them to be sold in the United States." *Id.* at 596.

In *Fenner*, a divided panel of our court held that, under *Ford*, only the last two of those five theories were categorically preempted. Those two theories, the majority explained, "would require a showing that, contrary to the EPA's decision, the Duramax Trucks failed to meet EPA standards." *Id.* But the majority held, on the record there, the plaintiffs' first three theories did "not depend on the use (or misuse) of a 'defeat device,' nor on any fraud 'in the emissions-testing process.'" *Id.* at 599. To that extent, therefore, the majority held that the claims based on those theories were not preempted. *Id.*

Here, at the time of the district court's decision on summary judgment, the plaintiffs' remaining claims (as we have defined that term) were based on their second and third theories. And in *Fenner* we held, on the record there, that claims based on those theories were not preempted. Hence the plaintiffs argue that their remaining claims are not preempted here.

The defendants counter we should simply disregard *Fenner* because, they say, our holding in *Fenner* conflicted with our holding in *Ford*. *See generally Habich v. City of*

*Dearborn*, 331 F.3d 524, 530 n.2 (6th Cir. 2003).   That is an overstatement.   *Fenner* acknowledged each of the four grounds of preemption cited in *Ford*; and the majority gave coherent reasons why (as to the plaintiffs' first three theories) none of those grounds for preemption were present on the record there.   True, several judges later disagreed with that reasoning.   *Fenner v. Gen. Motors, LLC*, 121 F.4th 1117 (6th Cir. 2024) (order denying petition for rehearing en banc).   But it takes more than spirited disagreement about a rule's application to particular facts, for one panel lawfully to disregard a published decision of another.   *Wright v. Spaulding*, 939 F.3d 695, 700 (6th Cir. 2019).   The holding of *Fenner* applies here.

In *Fenner*, the court reasoned that, on the record there, the plaintiffs' first three theories of liability did "not implicate or challenge the EPA's determinations" that the AECD at issue was not a defeat device.   113 F.4th at 596.   In addition, the court said, at least some of the plaintiffs' evidence in support of those theories "exists independently of EPA standards."   *Id*. at 596–07.   Thus, the court concluded, the plaintiffs there could "prevail without showing that the subject vehicles violate EPA regulations."   *Id.* at 598.   The court therefore held that claims based on these theories were not preempted.

The question now is whether the same things are true in this case.   We will not decide that issue in this appeal:  the district court has presided over this case for some seven years now, and thus knows the record better than we do.   Instead we will remand the case for the district court to decide whether, on this record, the plaintiffs' remaining claims can proceed without relying in any way on a disagreement with the EPA's determinations.

Specifically, the court should determine whether, as narrowed in this case, the plaintiffs' remaining claims (which are, again, based on their second and third theories) "do not depend on the use (or misuse) of a 'defeat device,' nor on any fraud 'in the emissions-testing process.'"   *Id*. at 599.   To that end, the term "theories"—as that term has been used in both *Fenner* and this case—means syllogisms in support of a particular claim.   Thus, for a claim based on a particular theory to avoid preemption, no part of its syllogism can "implicate or challenge" a determination of the EPA.   *Id*. at 596.   Moreover, the evidence in support of the claim must "exist[] independently of EPA standards."   *Id*. at 596–97.   Only if both of those things are true are the claims not preempted.   *Id.* at 598.   For the text of the Clean Air Act empowers the EPA's

Administrator, and not a lay jury, to determine compliance with the EPA's regulations under the Act. *See* 42 U.S.C. § 7525(a)(3), *id.* at 7521(a)(4).

B.

We briefly address the plaintiffs' remaining two arguments in this appeal. First, the plaintiffs challenge the dismissal of their RICO claim under the indirect-purchaser rule. That rule developed in the antitrust context as a "bright-line rule that authorizes suits by *direct* purchasers but bars suits by *indirect* purchasers." *Fenner*, 113 F.4th at 604 (quoting *Apple, Inc. v. Pepper*, 587 U.S. 273, 279 (2019)). In *Fenner*, we applied that rule to a RICO claim materially identical to the claim here. *Id.* Yet it is now the plaintiffs, on this issue, who say that *Fenner* conflicted with binding precedent. Suffice it to say we disagree: *Fenner* is binding precedent on this issue too. The district court was right to dismiss this claim.

Nor, finally, did the district court abuse its discretion in denying the plaintiffs' post-judgment motion to vacate its judgment in part and to approve a preliminary settlement agreement that Bosch had earlier terminated. *See Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1094 (6th Cir. 2016). The district court denied the parties' earlier motion for preliminary settlement approval, and no such motion was pending when the district court entered judgment.

*     *     *

This case has been pending for more than eight years now, so we do not remand it for the parties to litigate anew. Rather, we remand the case for the limited purpose of determining whether the plaintiffs' remaining claims (as we have defined that term here) are preempted under the analysis described above. To the extent any such claims are not preempted, the district court may do the following: (i) decide (upon an appropriate motion) the separate question whether the record in this case—as it now stands after the close of discovery—shows the existence of genuine issues of material fact as to any such unpreempted claim; and (ii) otherwise engage in proceedings consistent with this opinion.